Good morning, your honors. May the police be called. My name is Ji Xianli, and I represent Petitioner. In this case, the BIA found Petitioner not to be credible. The BIA based its adverse credibility determination on a single minor inconsistency. The record does show that Petitioner's sister wrote a letter indicating that his bookstore was shut down on February 13, 2005. While other evidence, including Petitioner's testimony indicating that the bookstore was shut down on February 13, 2006. So the exact one year difference strongly indicates Petitioner's sister just made an honest mistake in writing down the wrong date. However, the immigrant judge found that the inconsistency, the single inconsistency, to be sufficient to support an adverse credibility determination. While ignoring overwhelming evidence indicating it is just an honest mistake. For example, the record does contain numerous business transactions which occur after February 13, 2005 or before February 13, 2006. Again, strongly indicating that the bookstore was still in business after February 13, 2005, the date that appeared in the sister's letter. Under the REAL ID Act, the immigrant judge may consider any inconsistencies, whether or not the inconsistencies go to the heart of the asylum claim. But under REAL ID, the IGA is also required to consider the totality of circumstances. So in this case, the IGA did not do so. More importantly, Your Honor, in... We've had a rule in our case law that if there's one basis that would support an adverse credibility finding, that's sufficient. So you said, though, a minute ago that we should... But this is one... ...that we're obligated to apply, look at everything to assess. But this is one single minor, I emphasize the word minor, inconsistency. So I'm not aware, Your Honor, in this court or for that matter any other courts that will go that far to say that one single minor inconsistency will support an adverse credibility determination. As the court... Saipan. Saipan. He was married, he married. That's right, Your Honor. And then there was a short time that they were married and they got a divorce. And his wife never attempted to immigrate him during the time of their marriage? That's correct, Your Honor. The IGA says something to the effect that, well, there were other things going on in his life that suggest... I think that's pure speculation on the IGA's part. And also the IGA, that analysis did not form the basis for the IGA's adverse credibility determination. Also, if we look at the BIA's decision, the BIA did not adopt the IGA's reasoning in that aspect. So what before the court now is that whether or not that a single minor inconsistency will be sufficient to support an adverse credibility determination. I think the answer to that is definitely no. I think more importantly, Your Honor, as I pointed out in my opening brief, the BIA, in agreeing, in affirming the IGA's adverse credibility determination, misinterpreted the law and relied on the court's decision in Aden to support its adverse credibility analysis. Even the government acknowledged on its brief on page 15 that the BIA's citation to Aden was not entirely correct. So I would argue it's a traditional position that this glaring error in the BIA's interpretation of law alone would warrant a reversal of its decision. But the government argues it's a harmonious error because the BIA also relied on another case, in this case, Shredtha. Shredtha, S-H-R-E-S-T-H-A. But in that case, Your Honor, the court was of the opinion that even minor inconsistencies in proper circumstances will support an adverse credibility determination. So I want to bring to the court's attention the court used the word inconsistencies, the plural form, not inconsistency, as in this case, the singular form. So now the court is reviewing the issue whether this just one single inconsistency relating to a date will be sufficient to find the petitioner not credible. The other thing the BIA, I can't remember if it was the BIA or the IJ pointed to, was that his sister was married to his, I guess the brother-in-law? Yes, Your Honor. Who was running the store? That's right, Your Honor. And was approached by the people who wanted to store books? Yes. Is that right? That's correct, Your Honor. And the IJ makes a big deal about it, the fact that she would have well been aware when the bookstore was closed. Of course. Of course she was aware. That's why she was saying that I made a mistake, because she actually informed, according to petitioner's testimony, she actually informed petitioner, oh, I'm sorry, I made a mistake. But nowhere in the record petitioner was asked whether or not everything that he submitted was accurate. So until on the cross-examination, this inconsistency was brought to his attention, and then he explained to the court, my sister did tell me that she made a mistake, she just wrote the wrong date. Another thing relates to the cooperation requirement, Your Honor. The BIA agreed with the IJ that the petitioner failed to submit reasonably available evidence, namely a statement from a Falun Gong practitioner in China. But as the court ruled in Rehm v. Holder, which came after the BIA rendered decision and came after both IJ and government briefed the court, in Rehm v. Holder, I believe Judge Rehm wrote the opinion. The court specifically holds that the immigration judge, having concluded that the cooperative evidence was necessary, was required to give Rehm notice of decision and provide him with an opportunity to obtain the required evidence or explain his failure to do so. But in this case, the record does not indicate that the petitioner was ever put on notice that he was required to submit a statement from a fellow Falun Gong practitioner, nor were he ever asked to explain why he did not submit such a statement. The requirement of a statement from a fellow Falun Gong practitioner was raised for the first time in IJ's decision. So therefore, the BIA is, if the BIA, if the court tend to agree with the BIA that the statement from a Falun Gong practitioner was reasonably available and should be submitted, so this case should be remanded to the board, and then... Mr. Yuan, I think if I'm not mistaken, and I may be wrong about this, Judge Reinhart may be more knowledgeable than I am on this particular point, but I think the issue you raised with respect to Rehm... Yes, sir. I think it's before our court in a non-bank proceeding in Oshadi, is that right? Yes, that's right. Oshadi. Oh, you... I wasn't... Let me see. Was that opinion withdrawn? No, no, it's not withdrawn, but the issue is in bank. Okay. In a case called Oshadi. Yes. Which means we may have to wait for the in-bank decision, at least on that issue. Oh, okay, yes, sir. But still, on the other hand, Your Honor, if, let's assume that Rehm will be remanded, and then the record does contain information indicating that the evidence may not be reasonably available, for example, the country report does indicate that the Chinese authorities often censored mails, international mails or domestic mails, and also, based upon the petitioner did provide a letter from a friend, which indicated asking him not to contact him, because contacting him would be very dangerous. So the BIA, by asking... I see you're out of time. Oh, I'm sorry. I'll give you a minute or two for rebuttal, but you... Thank you, Your Honor. Thank you. Ethan Cantor, Department of Justice, on behalf of the respondent. This is not merely a typographical error or an honest mistake. The BIA and the immigration judge properly found it to be a major discrepancy, even though under the REAL ID Act even minor discrepancies could support an adverse credibility determination. What happened here was a letter was sent in December of 2005 by the petitioner's sister. That's at page 116 of the administrative record. She sent the letter in December of 2005, and in that letter she noted the store was closed in February of 05. It could not have been a typo as to something that happened in 06. That's the contention, was that same date, February 13, but instead of 05, it should have been 06. Well, it couldn't be 06 if the letter was sent in December of 2005. So this was not a trivial typo. It's a major inconsistency. Does it say that in either of the decisions that it couldn't have been correct because it was received before that date? The decisions do not say that the letter was received before the date of the store's closing. However, the decisions do go in in some detail and discussion about the discrepancy, the petitioner's failure to explain the discrepancy. But there's nothing that says the letter was mailed in advance. Your argument is not made in any of the BIA decisions or the IJ's decisions. Well, the question is whether there's substantial evidence in the record supporting the BIA and the IJ's conclusion that this was a discrepancy that was not explained. Therefore, this is evidence in the record that supports... It says in the record that it was mailed... 116. Was that her testimony? That was his testimony, and it was given when the immigration judge was scrutinizing this very issue. Counsel talks about notice. At the hearing, they were scrutinizing this date discrepancy because, indeed, the question was, was the store closed? Is the story true? Where in the record does it say that it was received and, therefore, the date had to be correct? That page... No, we're talking about the hearing transcript, right? The hearing transcript, Administrative Record page 116. Can you explain why in her letter she says the bookstore was closed and sealed on February 1305? Answer, she told me she made a mistake. She wrote down the year wrong. Her date was wrong. When should she tell you this? During a telephone conversation. When was the conversation? I don't remember the exact date as when we had the telephone conversation, but the letter she sent out was in December, year 2005. I merely note this as an indication of both substantial evidence to support the finding that it wasn't a trivial inconsistency, a mere typographical error. Indeed, it could not have been. I don't understand the answer. The date was in December 2005, and that should be after the date that she sent out the letter. Referring to the telephone conversation, the telephone conversation post-dated the letter, but the letter was sent year 2005. But, Your Honor, even assuming that this evidence is not in the record, what we have here is an important standard of review to consider. The record must compel the conclusion that corroboration that was requested by the immigration judge was unavailable, and nothing in this record compels that conclusion. The immigration judge, at pages 116, 117, 118, asked, Why didn't you have your sister send another letter? And the petitioner responded to the immigration judge, You know, I actually considered it at the time, but I thought maybe this won't matter. That was his answer. And that explanation was found to be unsatisfactory. The immigration judge also asked him, Do you have any Falun Gong materials? And he said no. And there was cross-examination, and subsequent to that, the immigration asked, Do you have any redirect? And the petitioner counsel responded, No redirect. They did not ask to adjourn the proceeding. They did not ask for a continuance. They did not ask for any further opportunity to explain the lack of corroboration. And it's clear that this corroboration was reasonably available. Indeed, the sister had written one letter. There were two letters from the mother. This proves, like the case in this Court's decision in Shrestha, which is difficult to pronounce, that a reasonable trier of fact would not be compelled to conclude that corroborating evidence was unavailable. And there, it was that the Court cited that in that case, Shrestha had regular contact with the individuals that the IJ wanted more evidence from. In that case, there were, in fact, they cited the parents' illiteracy. But those difficulties were not found to be sufficient. In this case, of course, we don't have the illiteracy. Indeed, the mother had written two letters already. So this case is a much easier one to decide regarding corroboration than the Court's decision in Shrestha. Counsel alluded to an argument that he had no notice. But as we pointed out in our brief, he did not exhaust this issue to the board. So the Court has no jurisdiction to address it. It's not a constitutional issue. It's administratively correctable. And it could have been addressed by the board, yet he didn't pursue it. In sum, Your Honor, if the Court has no further questions, the burden on the petitioner in this case is a heavy one. It's imposed under the REAL ID Act to show that the record compels the conclusion that the corroboration requested by the immigration judge was unavailable. It cannot meet that standard in this case. And there's no question, because it's expressly written in the IJ's decision, that this was a decision not based on one inconsistency. It was based on the totality of circumstances. That's in the VIA's decision. The immigration judge talks about the context, which Your Honor alluded to, and various other documents that were submitted. In fact, documents that the immigration judge had found favorable to the petitioner, but nonetheless had fallen short, did not persuade the Court that the inconsistency supported an adverse credibility determination and the failure to corroborate without a reasonable explanation for it also supported that determination. So I ask the Court to affirm that. Your Honor, if you're feeling sure, I understand your whole reason. The reason for the decision is the inconsistency in the date, which is supported by a number of other circumstances and could only have been cured, and could have been cured, by further corroboration. Could have been cured? Had there been corroboration? I don't know that it could have been cured, but the immigration judge was reasonable, was under law, could request it. Hold on. Yes. If it could have been cured, it could have been cured by corroboration that was available. I can't speculate as to whether the corroboration would have nonetheless succeeded in persuading the immigration judge that the store was closed on that date. But there was no... I mean, the basis for the judge's decision is that the date was wrong, and therefore the sister's letter... Well, I don't want to imply that, because the immigration judge discussed many other factors. For example, that there was no official documentation about the closing of the store. In the record, he provided the license to open the store. Let me put it differently, then. Everything related to the question of the date of the closing of the store. For the most part, yes. But counsel... Excuse me. Your Honor did allude to the immigration judge considering a broader context, the entry to Saipan, the marriage, the inability to produce his wife as a witness, other things. And I wouldn't want to exclude anything that was expressed by the immigration judge, because it's a totality of circumstances determination. And I think that the immigration judge was careful to make clear that all the circumstances in the case were being considered. That's what I'm asking you. What are the other circumstances that are included within the totality of the circumstances? The other circumstances included the evidence submitted by the petitioner, which included the business records that he alluded to, which, of course, do not erase the discrepancy. They do nothing to overcome the discrepancy. What do they do to raise suspicion or to be... I mean, you could say he sent in his birth certificate, and it's wrong, and it's right. But that's not as part of the totality of the circumstances. That's right. A birth certificate would not be particularly relevant to whether or not he holds a well-founded fear of being persecuted by the Chinese government for having allowed Falun Gong materials to be stored in his bookstore. That's it. So what I'm asking you, if you say totality of the circumstances, what are those circumstances that make up the totality? Well, I'm indicating the circumstances that were considered by the immigration judge that were presented as favorable to the petitioner's case, as well as those that were considered to be unfavorable. I'm asking you which are the ones that were considered to be unfavorable. Okay. As the board noted, the primary basis was the discrepancy about the store closing that was precipitated by the sister's letter. But for the board to use the term primarily relied on implies that there were some secondary factors. Yes, and that's what I've been trying to ask you for the last five minutes. What are the secondary factors? Well, the board isn't required to enumerate all the factors. It upheld the immigration judge, and the immigration judge's decision cites other considerations. Right. So we wanted to discuss those other factors. You don't seem to want to. No, I'm not. Judge Reinhart's been asking you the last five minutes, what are the secondary factors? The secondary factors are the official documentation from the Chinese government. Yes, sir. One, you said business records, and I thought he was asking you, what's wrong with the business records? The business records don't address the discrepancy in the sister's letter. Right, but they don't count against him. Is there anything in the business record that would indicate that he lacks credibility? No. Okay. Two, the marriage. What's wrong with the marriage? The immigration judge alluded to context in which it was a short marriage. He didn't intend to enter Saipan in order to get married. The board did not cite those. He said he was married and divorced and never sought a visa. So what bearing does that have? I'm not suggesting it has a bearing. Okay. Is there anything you can suggest has a bearing? Yes. What? No official documentation from the Chinese government related to the store's closing, number one. Absence of corroboration. Absence of another letter from his sister to correct the deficiency and a failure to explain why he didn't send in the letter. An absence from any information from the Falun Gong members known to his sister and his brother-in-law who allegedly created this whole circumstance in the first place. And the premier of China also didn't send a letter, right? The Real ID Act authorizes the immigration judge to request corroboration, indeed further corroboration. Request corroboration? Did he request it? Yes. What did he say? He says in the record, the immigration judge states in the record that he was on notice coming into court. Before he came into court, he was on notice of the inconsistency. And then the immigration judge asked him, why didn't you clear this up? And he said, I don't know, I thought about it. So he concedes he thought. That's not quite what he said. That's not quite what he said. No, I am paraphrasing. I am paraphrasing, but essentially he said, quote, as a matter of fact, the letter was sent to me, not to the court, but I forwarded it to the court. I thought I should have, you know, I should show you the original letter. I was even thinking it doesn't matter, but you did mention it in the telephone by saying, I mean, she wrote the date wrong. That's not saying I thought about getting a new letter. It just says I forwarded it to the court. No, I wasn't suggesting, indeed. He didn't think about getting another letter. But he offered an explanation which conceded the discrepancy, and the result is he didn't do anything about it. He said that the IJ requested that he get corroboration. Your word was requested. Yes. Where did he request, where did the IJ request corroboration? The hearing transcript, pages 116 through 118. No, I don't think he quite requested. He just said, do you have any Falun Gong material with you? Do you have any Falun Gong material with you in Guam? That's not saying, I want you to provide me with corroboration, and I'm going to give you time to get it. I mean, when you say, do you have any material, I guess we're at a different, when you say he requested corroboration, in my notion, he says, would you provide me with corroboration? You take a break, you provide the corroboration. You can't just say, I need corroboration. If you don't have it right now, I'm deeming you to have denied corroboration. Do you have any Falun Gong material with you in Guam? No. Then his counsel says, I have nothing further, and the immigration judge offers him an opportunity for redirect after cross-examination pertaining to the unexplained inconsistency, and then he declines an opportunity for redirect. It's not exactly unexplained. He says, I talked to my sister on the phone, and she said it was a mistake. That's an explanation. Even so, the immigration judge, under the Real ID Act, may request further corroboration. He may, but he didn't. I believe he did. I believe a fair reading of the record is that the court, I don't, when the court asks, why didn't you have your sister send another letter, I believe the court is asking or implying or suggesting that perhaps another letter would have been relevant, pertinent, and may have provided corroboration. The judge could very easily have said, I'll give you a week or a month or a day or whatever to have you get another letter from your sister. That's a lot different from saying, why didn't you get one in the past? I think that this petitioner could have done any number of things to satisfy the immigration judge's questions and did not, including raise this issue about, I didn't have notice to the board, failed to raise that issue. But I think it's probably a winner if he did raise it, don't you? Excuse me? I think it was a winning issue if he had presented it. I don't see how it's a winning issue, that he didn't have notice. This is a very high standard to meet by the petitioner. He must show that the record compels the conclusion that the corroboration was unavailable. Was another letter from the sister unavailable? Were letters, the sister and the brother-in-law knew these Falun Gong members in China. They knew them. They were friends with them. Were those unavailable as well? I don't think so. I think the whole point of the notice requirement is so if the IJ has some doubts, the IJ can say, look, I don't believe your evidence, go out and get some. That's the point of the notice. And I take it on face value that they didn't raise it before the board, but I don't see anything in the record that indicated the IJ did this. And, you know, we do see a lot of cases. This isn't our first rodeo on immigration cases. I know. And one of those prior cases, Your Honor, is the Aden decision, 589F3rd at 1040. And this court characterized what changes and the significance of those changes with the Real ID Act and wrote the following. Corroborating evidence must, quote, unquote, must be provided where the trier of fact determines that it should be. Exactly. Unless the applicant does not have the evidence and cannot reasonably obtain the evidence. The record in this case does not compel the conclusion that this petitioner could not reasonably obtain the evidence. It does not compel that conclusion. This petitioner had gotten a letter previously. It showed he's in regular contact. Shrestha, this court relied on the fact that the petitioner in that case was in regular contact and the illiteracy of the parents in that case, this court found, was not dispositive. We don't have that in this case. In the case at bar, the parents are not illiterate. This case is a much stronger case than Shrestha. And the court should find that the record here does not compel the conclusion that the corroboration which the Real ID Act authorizes an immigration judge to demand. Yes, there's no question about that. That that corroboration was unavailable. Okay. We may have this settled in their in-bank case. Thank you. Thank you very much. I just want to address. Counsel, can you answer what your opponent says? Yeah. The letter, first of all, the letter, on the transcript respondent, petitioner did indicate that the letter he sent out was in December, year 2005. I believe, again, petitioner misspoke on the year. So that's why the court cannot rely on the discrepancies relating to a date to find petitioner to be credible or not to be credible. The record is clear on this issue, Your Honor. On page two, the administrative record, 288, we do have the mailing label indicating the letter was sent out in year 2007, December year 2007, not 2005. Is that? That's in the administrative record? Yes, Your Honor. Page 288? Page 288. The envelope containing the sister letter. Yeah, I'm holding it up here. Okay. All right. Well, maybe that's why the court didn't. Yeah, maybe that's why the judge even didn't notice the discrepancy. All right. That's very helpful. Thank you. Thank you, Your Honor. And also, Your Honor, I believe the issue whether or not petitioner was on notice, that issue was not waived before the board because that issue was part of the issue whether or not petitioner has met his burden of proof. You know, it wasn't expressly raised, though, was it? No, Your Honor. But the issue whether or not he has met his burden of proof was before the BIA. And also, if we look at the IHS decision, as Judge Rehnquart so correctly pointed out, the judge did not analyze that issue in the context of burden of – to present the additional evidence, but that issue was in the context of whether or not he was credible. So, therefore, petitioner, in his brief to the BIA, was acting reasonably, not raising that issue specifically. I don't have anything else to add.
judges: Reinhardt, Thomas, Paez